MORGAN *v.* LINHAM

No. 40126      April 9, 1956      86 So. 2d 473

*Melvin, Melvin & Melvin,* Laurel, for appellant.

· · William· Harold· Odom, Lampkin Butts, Laurel, for appellee..

McGEHEE, C. J.

This appeal is from a decree setting aside and canceling a foreclosure sale of a lot and residence in the City of Laurel made on December 18, 1954, to the appellant John Hezzie Morgan at the purchase price of $510, but against which property there existed liens for taxes and paving assessments, the payment of which was necessary to clear the title, which would cause the property to cost the purchaser at the foreclosure sale a total of approximately $750.

The validity of the foreclosure sale was attacked (1) on the ground that the indebtedness secured by the deed of trust had been fully paid prior to the beginning of the foreclosure proceeding; (2) that the property which the special chancellor found from the evidence was worth between $3,750 and $4,000, was sold for a wholly inadequate consideration as compared with its reasonable market value (the property consisted of a fifty by one hundred foot lot and a 5-room residence on a paved street, equipped with water, gas and electric facilities); and (3) that the appellee Prentiss Linham, who had inherited the property, as the sole heir of his wife Waulene

Linham, grantee of the mortgagor in the foreclosed deed of trust, executed on February 25, 1948, to the Laurel Federal Savings and Loan Association, a corporation, as beneficiary, J. R. Buchanan, Trustee, securing an indebtedness of $1,100, should have been given actual notice of the trustee's sale, since the appellee was then in possession and occupancy of the property, and the same was sold pursuant to the published notice of sale, which he was unable to read, and at a time when he was awaiting an answer from the Vice President and Secretary of the Laurel Federal Savings and Loan Association as to his receipts for payments on the loan, and which receipts, forty-nine in number, had been delivered to and the said official upon the theory that they would establish the correctness of his contention that he had fully paid the indebtedness secured by the deed of trust, the property having been sold under foreclosure without the owner being advised whether or not the examination of his receipts in connection with the record of the loan had disclosed that he owed a balance of $63.78 on the indebtedness; that these circumstances, coupled with the inadequacy of the price for which the property was sold, were sufficient to justify the action of the special chancellor in setting aside the sale upon reimbursement of the purchaser by the appellee within ten days thereafter to the full extent of his bid, together with legal interest, the sum of $8 paid out in insurance, the recording fee of the trustee's deed to the appellant, and upon payment of all the costs of the suit by the appellee as complainant in the trial court.

It appears that the deed of trust in question was executed by T. S. Sutton and wife at a time when he owned the property described therein; that shortly after the execution of the deed of trust on February 25, 1948, the wife of T. S. Sutton died, and that then on April 4, 1950, T. S. Sutton, a widower, conveyed the property to his daughter Waulene Linham, and that she there-

after died leaving the appellee Prentiss Linham as her husband and sole heir-at-law; and that there was then a balance due on the indebtedness of approximately $350, and that the title inherited by the appellee was subject to the lien of the said indebtedness.

The appellee did not expressly assume the payment of the said indebtedness, but recognizing the same to be a lien on the property he began making payments of $10 each thereon on the last Monday in March 1952. It was shown that prior to the beginning of the foreclosure proceeding, pursuant to which the sale was made on December 17, 1954, he had paid approximately $700 to the mortgagee but that his payments were applied in part to the payment of taxes, paving assessments, insurance, etc., leaving a balance of approximately $65 as found by the chancellor.

After the commencement of the foreclosure proceeding, the mortgagee paid out additional sums for taxes, insurance, etc., leaving a balance due the mortgagee out of the proceeds of the sale, of the sum of $170.91. The trustee paid to the mortgagee the sum of $20.18 for the publication of the notice of sale, a $35 attorney's fee, and $1.10 revenue stamps, leaving a balance of $282.81 of the proceeds of the sale, a check for which amount was tendered to the appellee but was refused.

The special chancellor found, as aforesaid, that the property was easily worth $3,750 to $4,000; that the amount of the bid in the sum of $510, plus outstanding taxes and paving assessments, would cause the purchaser to have to pay a total of $750 to clear the title, including the amount of his bid at the sale.

The appellee testified that, sometime prior to the commencement of the foreclosure proceeding, he delivered 49 receipts, covering numerous payments of $10 each, some for $12, one for $80, one for $50, and two for $25, to Mr. Curtis Jones, the Vice President and Secretary of the Loan Association, in order that it might be ascer-

tained whether or not he had paid the indebtedness in full, as hereinbefore stated, and the proof further discloses that Mr. Jones suffered a heart attack, was confined in a hospital in Chicago for a few weeks, and that it was during this time that the foreclosure sale was had; that the appellee Prentiss Linham (commonly known as "Crip" Linham on account of his being crippled) could not read and did not have actual notice of the publication of the notice of the sale and did not know until he was advised by the purchaser that the sale had taken place. It is not contended that after the receipts for payments had been delivered to Mr. Jones any notice was ever given to the appellee that he still owed a balance of $63.78. Subsequent to the foreclosure sale the receipts were found in the safe of Mr. Jones and came into the possession of the mortgagee whose attorney tendered the same to the attorney for the appellee after the property had been sold under the foreclosure.

In view of this testimony the special chancellor found as a fact and as a conclusion from the facts that since the mortgagee had originally loaned $1,100 on the property and it had been paid down to about $350 at the time it was inherited by the appellee, and that during the next two years thereafter he paid about $700 to the mortgagee and was indebted to the mortgagee in the amount of only $65 at the time the foreclosure proceeding was commenced, as found by the chancellor, and was contending to Mr. Jones that his indebtedness had been fully paid "and for the purpose of establishing this fact, he had turned over to one of the officers of the corporation (Mr. Jones) his receipts to be checked and that he believed the receipts were being checked at the time of the foreclosure, it is inconceivable to me to believe that the complainant was not deceived and misled, and as a result of this belief lost his property. Certainly, if he had not believed that his claim of payment was being considered, he would have had no trouble raising $65 on a

piece of property easily worth $3,750, and had he known of the sale and had not depended upon his belief that his receipts were being checked, he would have borrowed the money and paid up his indebtedness. I feel sure that his loss resulted not from any intentional fraud on the part of anyone, but from the illness of the official of the corporation to whom he had submitted his receipts, and which illness resulted in a failure to advise the complainant of the true amount of his indebtedness of $65. Had this been done, I feel sure that the complainant was waiting for it to be done and believed it would be done, he would have raised the $65 and discharged his debt."

The court held that the gross inadequacy of consideration, coupled with the foregoing factual situation, warranted the setting aside of the foreclosure sale, and cancellation of the foreclosure deed, upon the reimbursements to the purchaser being made, as hereinbefore stated in this opinion.

Under Section 888, Code of 1942, as construed in Castleman, et al. v. Canal Bank and Trust Co., 171 Miss. 291, 156 So. 648; Melchor v. Casey, 173 Miss. 67, 161 So. 692; and Harris v. Bailey Avenue Park, Inc., et al., 202 Miss. 776, 32 So. 2d 689, and 37 Am. Jur. 136, Section 691; only the mortgagor of the property or a grantee thereof who has assumed the mortgage indebtedness is entitled to notice of the sale, as owner of the property. Strictly speaking, the appellee herein was not entitled to such notice as owner of the property, since he was merely the heir of the grantee of the mortgagor. But the question arises here as to whether or not as a matter of equity and good conscience the appellee was entitled to notice, since he was not only in possession and occupancy of the property when the foreclosure proceeding commenced, and also at the time of the sale, and had been in constant touch with the mortgagee from the last Monday in March 1952, making payments regularly except when. "This misery settled in my hip

and I could not walk", and had delivered his receipts for payment to the said official of the mortgagee-corporation and was, as found by the chancellor, waiting to hear the result of the checking of his receipts with the record of the loan, and had not been advised that notwithstanding his receipts he still owed this small balance.

Neither the several decisions cited by the appellant nor those cited by the appellee would require the setting aside the foreclosure sale for a mere inadequacy of the consideration alone. Ordinarily the owner would not be entitled to have a foreclosure sale of his property set aside for mere inadequacy of consideration, but here we have that factor plus other equities in favor of the owner.

It is also assigned as error the overruling of a special demurrer to the effect that the Laurel Federal Savings & Loan Association was a necessary party-defendant and was not made so, and that this fact affirmatively appeared from the bill of complainant. The question was properly raised by special demurrer but we do not think that it was error to overrule the same for the reason that although the bill charged that the indebtedness secured by the deed of trust had been fully discharged and satisfied, and the prayer of the bill asked that the court should so hold, the fact remains that the court held that the same had not been fully paid and satisfied, and adopted the figure contended for by the appellant as being the balance due at the time of the commencement of the foreclosure proceeding, the Treasurer and Assistant Secretary and Manager of the Loan Association having testified that the indebtedness had been paid down to $63.78 at the time of the commencement of the foreclosure, and the proof showed that this amount, together with the additional taxes, etc. that was paid by the Loan Association during the foreclosure proceeding, were paid to it by the trustee out of the proceeds of the sale, and consequently the said mortgagee

had no interest in the property at the time of the filing of the present suit to set aside the foreclosure sale. By the decree of the court appealed from, the mortgagee is allowed to retain the $170.90 that was owing to it from the proceeds of the sale, and the complainant was required to reimburse the purchaser for the full amount of his bid, interest, insurance, etc. No question was raised by demurrer or otherwise as to the non-joinder of the trustee. This is not a suit to enjoin a foreclosure or to foreclose a deed of trust in chancery. It asks that the trustee's deed be cancelled as a cloud on the title of the complainant, wherein the complainant may proceed against those of his own choosing. The trial court could not have adjudged and decreed that there was no balance due the mortgagee, without the mortgagee being made a party to the suit where the foreclosure was had for the collection of an alleged balance due, but when the court recognized that there was due the mortgagee the amount testified to by its Treasurer and Assistant Secretary and Manager, and it was shown that this amount had been fully paid by the trustee out of the proceeds of the sale, the court had jurisdiction as between the appellee and the purchaser at the sale to cancel the trustee's deed to the purchaser, if the facts warranted the same being done. The court did not cancel the trustee's deed and deny the mortgagee any right to reforeclose the deed of trust for an indebtedness, since the indebtedness was admittedly fully paid out of the proceeds of the sale by the trustee, and it was required by the decree that the purchaser be reimbursed for his bid, etc., and the mortgagee is allowed to retain the amount received from the trustee in settlement of the mortgage debt out of the proceeds of the said bid. Therefore, since the mortgagee had no interest whatever in the property at the time of the commencement of this suit, it was unnecessary that the mortgagee be made a party-defendant thereto.

Nor was the complainant required to tender any balance due on the indebtedness since the deed of trust had been fully satisfied out of the proceeds of the trustee's sale.

For the reasons hereinbefore stated, we have concluded that the decree appealed from should be sustained and that the appellee should be given thirty days from the rendition of this decision within which to reimburse the appellant for the amount of his bid at the foreclosure sale, with the legal rate of interest thereon, plus payment of the other items of expense mentioned in the decree appealed from. In the reimbursement to the purchaser of his bid, plus these other items, the result is that the appellee will have to pay the indebtedness, trustee's fee, and the other expenses in connection with the foreclosure of the deed of trust, amounting to nearly three times as much as what he owed on the indebtedness on the day of the foreclosure sale, and several times the amount that he owed at the commencement of the foreclosure proceedings.

Affirmed.

*Hall, Kyle, Arrington* and *Gillespie, JJ.,* concur.