# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 96-CA-00374-SCT

*EB, INC. AND RICHARD A. NICHOLLS*

*v.*

*PAUL M. ALLEN*


*AND*


*PAUL M. ALLEN*


*v.*


*JANIE HESSLER*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/01/95 |
| TRIAL JUDGE: | HON. MICHAEL L. CARR, JR. |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | WILLIAM T. REED |
| | REBECCA C. TAYLOR |
| | E. FRANK GOODMAN |
| ATTORNEY FOR APPELLEE: | WOODROW W. PRINGLE, III |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND RENDERED IN PART-10/8/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 10/29/98 |


**BEFORE PITTMAN, P.J., BANKS AND WALLER, JJ.**


**PITTMAN, PRESIDING JUSTICE, FOR THE COURT:**


¶1. This case began when Janie Hessler (hereinafter "Hessler") sued Dr. Paul Allen (hereinafter

"Allen") on the outstanding principal and interest on a note and deed of trust. Dr. Richard Nicholls (hereinafter "Nicholls") intervened in the case. The original $200,000 note and deed of trust was given by Allen to Nicholls in exchange for 100 acres of land in VanCleave, Mississippi. Eventually, the note and deed of trust were assigned to Nicholls' attorney, Paul Benton. Subsequently, the note and deed of trust were assigned to Hessler, as part of a divorce settlement between Hessler and Nicholls. EB, Inc., who foreclosed on the property, was joined in this action as a third party by Allen.

¶2. Hessler and Nicholls were married on February 14, 1983. They divorced on August 23, 1984. The judgment of Divorce and Settlement Agreement provided that Nicholls pay Hessler lump sum alimony in the amount of $396,000, payable in monthly installments of $3000 for a period of 11 years beginning on August 1, 1984.

¶3. On January 13, 1986, Hessler and Nicholls entered into an Agreed Order modifying the Judgment of Divorce, whereby it was agreed that Nicholls would pay no more alimony to Hessler. Thereafter, Hessler filed a Complaint to set aside the Agreed Order modifying the judgment. On February 6, 1989, Judge Robertson denied the Complaint. No order was entered. On February 9, 1989, Hessler filed another motion to set aside the agreed order. On April 25, 1990, Judge Oswald, present law partner of William Reed, counsel for Allen, entered a judgment setting aside the Agreed Order. On August 28, 1990, that decision was appealed to this Court.

¶4. On October 10, 1990, Hessler filed a Motion for Contempt against Nicholls. On September 12, 1991, a judgment was entered settling all matters between Hessler and Nicholls. Included in the settlement was the provision that Nicholls dismiss the appeal to this Court. The transcript of the hearing on this settlement is included in the record.

¶5. Also included in the settlement was the provision that Paul Benton would assign to Hessler his interest in the note secured by deed of trust from Allen to Nicholls dated February 15, 1985. Nicholls argued in the lower court that the only interest Paul Benton had in the note was a collateral assignment from Nicholls for attorney's fees of $50, 000. The assignment from Nicholls to Benton is included in the record.

¶6. The second set of events leading to this appeal occurred as follows. On or about February 25, 1985, Allen bought 100 acres of land located in VanCleave, MS for $200,000 from Nicholls. The full amount of the purchase price was amortized and Allen delivered to Nicholls a promissory note secured by a deed of trust on the land. Shortly, thereafter, Nicholls and Allen started practicing medicine together. In order to purchase a one-half ownership in the stock of Gynecology & Obstetrics, P.A., Allen borrowed $125,000 from Pascagoula-Moss Point ("PMP") Bank. Allen's 100 acres was used as security for the debt, and Nicholls agreed to subordinate to the bank to facilitate the loan. Thereafter, PMP held the first mortgage position, while Nicholls held the second mortgage.

¶7. In September, 1987, the PMP loan was moved to Eastover Bank For Savings, the predecessor of EB, Inc. Allen had reduced the original principal by about $20,000, so the new loan was for $105, 010. Nicholls again signed a subordination agreement. Therefore, Eastover held the first lien position, while Nicholls held the second.

¶8. Allen's note at Eastover Bank was renewed in 1988 and 1989 with no subordination by Nicholls. No new deeds of trust were executed with these renewals.

¶9. In August 1990, Nicholls assigned the Allen note and deed of trust to his attorney, Paul Benton . The assignment language stated that:

> Said Deed of Trust and Contract for Sale is hereby assigned, conveyed, and delivered to Paul T. Benton in consideration of the Fifty Thousand Dollar ($50,000.00) retainer which Richard A. Nicholls, M.D., has agreed to pay Paul T. Benton for fees and expenses in the defense of the above stated cause of action.

Nicholls contended at trial that the assignment was security only for Paul Benton's fee.

¶10. In September, 1991, Hessler and Nicholls entered into a settlement, already mentioned above, wherein it was agreed among other things that Benton would assign to Hessler all his interest in the Allen note and deed of trust. This was in satisfaction of a $155,000 judgment that Hessler had obtained against Nicholls as well as to relieve Nicholls of the payment of $3000 per month in alimony. Nicholls and Hessler released each other from any and all claims against each other.

¶11. After the assignment of the note from Benton to Hessler, Allen began making monthly payments on the note to Hessler. Allen stopped making payments on the note to Hessler in December, 1992. The principal due on the note at that time was approximately $162,076.00, accumulating interest at the rate of $1350.64 per month.

¶12. As stated before, Eastover Bank held a note and first deed of trust on the same land that Hessler held her note on. The note to Eastover matured on September 25, 1992. The bank determined that the assignment from Nicholls to Benton to Hessler was defective in that the book and page number, as well as the date of the deed of trust were incorrect. The bank was attempting to refinance the loan. On October 27, 1992 and December 10, 1992, Joe Baran, branch manager of Eastover Bank in Ocean Springs, wrote Allen, via certified mail, advising him that he either needed to pay off the loan or get Nicholls's subordination. Allen's attorney, William Reed, by letter dated November 4, 1992, advised the bank that Nicholls had assigned his interest in the Allen note to his ex-wife, and that he would contact her attorney and attempt to obtain a subordination. EB did not hear from Reed again until the day before foreclosure.

¶13. The day before the foreclosure, February 10, 1993, Reed contacted Frank Goodman, EB's in house counsel. Reed asked Goodman to stop the foreclosure, and Goodman told Reed that the bank was not inclined to do that. Reed told Goodman that Joe Baran, the branch manager, had told Reed that the bank would stop the foreclosure if Allen would pay $2000 or $3000. Goodman told Reed that he knew nothing about that, but that he would look into it, and get back to him. Goodman asked the chief lending officer, Bob Hardison, if he knew of any such deal, and he said that he did not. Goodman was unable to contact Baran because he was out of town. He did talk to Baran's loan secretary, who also knew nothing about it. At trial, Baran denied ever telling Reed that the foreclosure would be stopped if Allen paid $2000 or $3000.

¶14. Goodman suggested to Reed that he seek injunctive relief, and Reed stated that he was contemplating it. He did not, however, seek an injunction. The foreclosure sale was held on February 11, 1993, and a third party bought the 100 acre parcel for $84,000, the amount of the outstanding indebtedness to EB.

¶15. As stated before, Hessler sued Allen for payment on her note. Nicholls intervened because it was his contention that his assignment to Benton was only for attorney's fees, and that he still retained an interest in the note, and should be paid. Allen joined EB, Inc. as a third party defendant for wrongful foreclosure on his property. Allen contended, among other things, that EB failed to give notice of the foreclosure to Allen or his attorney.

¶16. The Chancellor made findings of fact and conclusions of law. He found, in pertinent part, that:

(H) Eastover Bank held a Note and First Deed of Trust on the same land that Hessler held her Note and Second Deed of Trust from Allen. Eastover Bank renewed its Allen Note and First Deed of Trust in September, 1989, even though Nicholls was asked to subordinate but refused, and the bank refinanced without Nicholls' subordination. Said September, 1989 Note matured on September 25, 1992, and Eastover attempted to refinance. Hessler agreed to subordinate to the bank her Deed of Trust which Benton had assigned to her. When Nicholls refused to subordinate, the bank, without any actual notice to Allen, Hessler, or their attorneys, proceeded to foreclose the bank's Deed of Trust on February 11, 1993. The bank never advised Allen nor Allen's attorney, William Reed, that Nicholls had refused to execute the subordination agreement.

(I) Eastover had determined that the Hessler assignments from Nicholls had not been properly recorded but apparently did not convey this information or their concern to Allen or his attorney, nor to Hessler or her attorney.

(J) Eastover would have refinanced the Allen Deed of Trust, thereby causing Allen to continue his payments to Hessler, except that Nicholls would not execute the subordination agreement to cure the bank's problem.

(K) Intervenor/Cross-Defendant Nicholls' position was that his settlement with Hessler in the Chancery Court in September, 1991, was not for the full amount but only for a partial amount. At no time prior to the foreclosure did Nicholls state why he refused to sign the subordination agreement; and if he had any rights or any just cause to make such a showing, he failed to do so.. Allen and Hessler were willing to execute whatever was necessary to obtain the Eastover refinancing.

(L) Nicholls owed the alimony debt; and his maneuvering of the Chancery settlement and his subsequent actions to try to get the bank to believe he retained an interest in the Allen Note, when he did not, all contributed to the bank's hasty foreclosure of the Allen Deed of Trust; actions which this Court does not condone.

(M) The bank was unreasonable in not being more deliberate in its efforts to refinance the Note and Deed of Trust. The bank had let Allen have other money on his mobile home and for other purposes, and also had a third and fourth mortgage. Apparently, the bank was proceeding with the financing until one of its workers caused the process to stop, although Hessler had subordinated to the entire debt due the bank.

(N) The bank's position was well protected and it had been so advised by its attorneys. The bank's documents showed, and witness Baran, the bank's employee, knew that both Allen and

Hessler were represented by counsel, but the bank never gave Allen or his attorney, nor Hessler or her attorney, actual notice that it had failed to obtain a subordination from Nicholls and was proceeding with foreclosure....

(O) Eastover Bank was in the process of combining its assets with Sunburst Bank.

(P) Eastover was obligated to give actual notice of the foreclosure to Defendant Allen and Plaintiff Hessler; and the bank led Allen's attorney to believe it would agree to stop the foreclosure. There was a possible disruption of the combination with Sunburst Bank; and the bank made a quick decision to proceed with foreclosure, based upon Nicholls' refusal to subordinate, and then gave no notice of its intentions to foreclose to either Allen or Hessler.

Based on these findings of fact, the Chancellor rendered his opinion:

(A) That a valid contract and Note was executed between Defendant Allen and Intervenor/Cross-Defendant Nicholls, for which Allen was to pay $1930.00 per month toward a $200,000.00 indebtedness; and that Allen paid on said indebtedness until December, 1992, and has made no further payments since.

(B) The Note from Defendant Allen to Plaintiff Hessler was validly assigned to Hessler; Nicholls assigned all of his interest pursuant to representations made to the Court in September, 1991, as well as by entering into an agreement and by order of compromise; and Paul Benton received a partial assignment of the Note to Nicholls, which he then assigned to Hessler.

.....

(E) Plaintiff Hessler is entitled to, and hereby is awarded, judgment of and from Defendant Allen in the principal amount of $162,076.38, representing the balance due on the note, $41, 869.84 accumulated interest, and $30, 519.93 in attorney's fees, for a total judgment of $234, 076.38.

(F) Defendant Allen has been wronged in a number of instances, both by the Intervenor/Cross-Defendant Nicholls and by the Third-Party Defendant EB, Inc. Allen has been victimized, lost his home, lost the possibility of ever realizing anything from land that he might have some day realized something from; and was denied the benefit of full knowledge of the bank's foreclosure plans.

(G) Intervenor/Cross-Defendant Nicholls attempted to use the Chancery settlement process to have Hessler accept less than $50,000.00 for a $156,000.00 Judgment, while his representatives had represented that the full $170,000.00 Note and Deed if Trust had been assigned, which position by Nicholls was not supported by the Chancery settlement, handwritten agreement and Court Orders. Nicholls is hereby held responsible by this Court for inequitable conduct and does not come into this court with clean hands.

(H) Third-Party Defendant EB, Inc., in its haste to proceed with foreclosure, despite its efforts to complete its transaction with Sunburst Bank, is one of the most overriding factors in the Court's mind wherein Defendant/Third-Party Plaintiff was wronged. EB, Inc. should have been equitably estopped from foreclosing until it had given Allen actual notice that the bank had

firmly decided to foreclose and had given him notice of the time of the sale. Forfeitures of this nature are the kind equity frowns upon. This Court is of the opinion, and so finds, that Nicholls and EB, Inc., are equally in violation of the basic rules of equity and, as such, should be each, and they hereby are, ordered to pay to Allen the sum of $50,000.00 each, to be applied by him on his Judgment to Hessler.

¶17. EB, Inc., Nicholls and Allen, have all appealed the judgment of the chancery court. The parties filed briefs and each is represented by its own attorney. Hessler, the appellee, did not file a brief. The issues raised by each of the appellants are set out below.

## Assignments of Error--EB, Inc.

**1. The lower court erred in finding that EB, Inc. was obligated to and failed to give Allen and his attorney actual notice of the foreclosure.**

**2. The trial court erred in finding that EB, Inc. acted in haste in foreclosing Allen because of a pending business combination of EB, Inc.'s predecessor, Eastover Bank for Savings and Sunburst Bank.**

**3. The trial court erred in finding that EB, Inc. was unreasonable in not being more deliberate in its effort to refinance the Allen loan.**

**4. The trial court erred in finding that EB never advised Allen or his attorney of the need to obtain a subordination agreement.**

**5. The trial court erred in finding that EB had determined that the assignment from Nicholls to Hessler had not been properly recorded, but apparently did not convey this information or their concerns to Allen or his attorney.**

**6. The trial court erred in awarding damages to Allen from EB.**

## Assignments of Error--Nicholls

**1. The lower court erred in failing to award Nicholls judgment on his outstanding note and deed of trust to Paul M. Allen.**

**2. The lower court erred in awarding Allen a $50,000.00 judgment against Nicholls with no justification or support in the record.**

**3. The lower court erred in failing to grant Nicholls' 41(b) motion.**

## Assignment of Error--Allen

**1. The trial court erred by failing to fully assess the damages suffered by Janie Hessler and Paul M. Allen, to Richard A. Nicholls and EB, Inc.**

## STANDARD OF REVIEW

¶18. "This Court will not disturb the findings of a Chancellor unless the Chancellor was manifestly wrong, clearly erroneous or an erroneous legal standard was applied." *Bell v. Parker,* 563 So. 2d 594, 596-97 (Miss. 1990). In other words, "[o]n appeal [we are] required to respect the findings of fact made by a chancellor supported by credible evidence and not manifestly wrong." *Newsom v. Newsom,* 557 So. 2d 511, 514 (Miss. 1990).

## DISCUSSION OF LAW

### EB, Inc.'s Appeal

**1. The lower court erred in finding that EB, Inc. was obligated to and failed to give Allen and his attorney actual notice of the foreclosure.**

¶19. EB argues that the lower court erred in finding that EB was required to give actual notice to Allen of the foreclosure, and in finding that EB had failed to do so. EB argues that it did give notice to Allen of the possibility of foreclosure through two letters mailed to Allen. These letters are dated October 27, 1992 and December 10, 1992. Both of these letters notified Allen that his loan was in default, and that unless the bank got a subordination from Nicholls, it would be forced to foreclose.

¶20. William Reed, Allen's attorney acknowledged receipt of the October letter and notified the bank that Nicholls had assigned his interest in the Allen note to Hessler (actually to Benton then to Hessler). Reed advised the bank that he would be contacting Hessler's attorney to get a subordination from her and that he would notify the bank when he had a response. Reed also wrote Hessler's attorney and advised him as follows:

> Attached is a copy of a letter from Eastover Bank to Dr. Allen. Tom Anderson, Eastover's closing attorney, advises that the Assignment from Dr. Nicholls to Ms. Hessler has an improper reference. If Dr. Nicholls will not agree to execute a proper subordination, it may be necessary to seek relief in Chancery. Please advise.

The bank did not hear from Allen or his attorney, Reed, until the day before foreclosure.

¶21. The chancellor found that the bank had failed to give notice to Allen of the foreclosure. Under the power of sale provisions set forth in Miss. Code Ann. §§ 89-1-55, 89-1-57, and 89-1-59 (1991), EB did all that it was required to do. In fact, Allen did not allege and the chancellor did not find that EB had failed to comply with the statutory notice provisions. The chancellor seemed to find that EB owed some extraordinary notice to Allen. As EB argues, any requirements beyond those expressed in the applicable statutes are determined by the provisions of the note and deed of trust. *Lake Hillsdale Estates, Inc. v. Galloway,* 473 So. 2d 461, 465 (Miss. 1985). The note and deed of trust in the case *sub judice* required no such extraordinary notice. Notice that meets the statutory requirement is always sufficient and additional requirements are not to be added.

¶22. It is undisputed that Allen's loan was in default. It matured in September, 1992, and the bank foreclosed in February, 1993. Allen was in default for a full five months. Despite the fact that the bank was attempting to work with Allen to renew his loan, Allen was in default. As such, the bank had full authority to foreclose on its deed of trust. EB gave the proper notice under Miss. Code Ann. § 89-1-55 (1991), and that is all that was required.

**2. The trial court erred in finding that EB, Inc. acted in haste in foreclosing Allen because of a pending business combination of EB, Inc.'s predecessor, Eastover Bank for Savings and Sunburst Bank.**

¶23. The chancellor found that EB had wronged Allen by acting in haste to foreclose his loan. The chancellor apparently found it persuasive that Eastover was in the process of combining its assets with Sunburst Bank, and that because of this business combination, Eastover was in a hurry to tidy up loose ends such as Allen's note. The record in this case does not support this conclusion. In the scheme of things, the Allen note was not a deal breaker between Eastover and Sunburst. Furthermore, it is a stretch to conclude that EB acted with haste in foreclosing on Allen. As has been stated before, Allen was in default for a full five months before the foreclosure sale was held. Allen was aware that the bank had concerns about the assignment from Nicholls to Benton to Hessler, and that EB would not renew his note until those concerns were taken care of. Allen was unable to cure the problems and the bank chose to foreclose, but only after advising Allen of its concerns and giving him an opportunity to clear up the problems. The chancellor was in error in finding that EB acted with haste in proceeding to foreclosure, thereby wronging Allen.

**3. The trial court erred in finding that EB, Inc. was unreasonable in not being more deliberate in its effort to refinance the Allen loan.**

¶24. The trial court found in finding (M) that EB was unreasonable in not being more deliberate in refinancing Allen's note. EB argues that it was deliberate in its efforts to refinance the note. It asserts that it made efforts to refinance based on reasonable terms and that it was patient in this effort. EB further asserts that it fully advised Allen and his attorney of what was required to complete the refinancing. EB argues that it was Allen who was not deliberate in his efforts to refinance.

¶25. We find that EB was patient with Allen, fully advised him of what was required to refinance the loan, and was not unreasonable in requiring that it maintain a first lien position. Through Baran's letters to Allen, Allen was fully informed of the requirements of EB. Despite the bank's warnings that it would have to foreclose if the necessary title work was not obtained, Allen did not obtain it. Furthermore, Allen was given five months from the maturity date of the note to foreclosure in order to effectuate the necessary paperwork. He did not do so. We hold that the trial court was in error in finding that EB was unreasonable in not being more deliberate in its efforts to refinance Allen's loan.

**4. The trial court erred in finding that EB never advised Allen or his attorney of the need to obtain a subordination agreement.**

¶26. The trial court found, in findings (H) and (N), that EB never advised Allen or his attorney that Nicholls had refused to execute a subordination agreement. EB argues that this finding is unsupported by the record. Reed, Allen's attorney, in a letter to Rose, Hessler's attorney, acknowledged that he had notice of the bank's concerns and for the need for a subordination from Nicholls. In Baran's October 27, 1992 letter to Allen, Baran advised Allen that it was the bank's understanding that Nicholls would not agree to a subordination. Additionally, in Baran's December 10, 1992 letter to Allen, Baran again advised Allen that EB needed a subordination from Nicholls. Obviously, Allen had notice at that time that the subordination had not been obtained. We find that all parties involved in this litigation were well aware that Nicholls would not subordinate, and that the

refinancing could not take place unless and until he did so. The trial court was in error in finding otherwise.

**5. The trial court erred in finding that EB had determined that the assignment from Nicholls to Hessler had not been properly recorded, but apparently did not convey this information or their concerns to Allen or his attorney.**

¶27. The trial court found in finding (I) that "Eastover had determined that the Hessler assignments from Nicholls had not been properly recorded but apparently did not convey this information or their concerns to Allen or his attorney, nor to Hessler or her attorney." This assignment of error is essentially the same as the last. Reed, Allen's attorney, acknowledged in a letter to Rose, Hessler's attorney, that Tom Anderson, the closing attorney for Eastover, had advised Reed that the assignment from Nicholls to Hessler was improperly recorded. This letter alone shows that the trial court was in error in making this finding. Reed clearly acknowledged that he had been told of the improper assignment, and of the bank's concerns in relation thereto.

**6. The trial court erred in awarding damages to Allen from EB.**

¶28. Allen sought damages in the amount of $200,000 plus interest, attorney's fees and exemplary damages. The trial court awarded him a $50,000 judgment against EB to be applied to Hessler's judgment against Allen. The trial court erred with respect to all its findings of fault on the part of EB, and therefore an award of damages against EB was also improper. EB had every right to foreclose on its deed of trust which secured its defaulted note to Allen. EB attempted to refinance the note, but was unable to do so without possibly giving up its first lien position. EB did not act hastily in the foreclosure, but instead made reasonable deliberate efforts to accomplish the refinancing. Allen, as well as his attorney, were fully informed as to the imminent foreclosure. EB provided the proper statutory notice of the foreclosure sale. We reverse the award of damages against EB in the amount of $50,000 because the chancellor was in error.

Nicholls's Appeal

1. The lower court erred in failing to award Nicholls judgment on his outstanding note and deed of trust to Paul M. Allen.

¶29. Nicholls argues that he should have been awarded a judgment against Allen on his outstanding note and deed of trust. The record disputes his contention.

¶30. On August 15, 1990, Nicholls assigned his note and deed of trust from Allen to his attorney, Benton. The deed of trust and contract for sale were assigned "to Paul T. Benton in consideration of the Fifty Thousand Dollar ($50,000.00) retainer which Richard A. Nicholls, M.D., has agreed to pay Paul T. Benton for fees and expenses in the defense of the above stated cause of action." Thereafter, on September 10, 1991, a settlement agreement was reached between Nicholls and Hessler in regard to their divorce. A transcript of that settlement hearing is included in the record. At that hearing, the parties agreed to settle all claims against each other. Nicholls was obligated to make alimony payments to Hessler in the amount of $3000 per month. Hessler also had a judgment against Nicholls for approximately $155,000. The settlement agreement contained several provisions, the important

one here being, that the Allen note which had been assigned from Nicholls to Benton would be assigned to Hessler. Benton made the assignment to Hessler.

¶31. Nicholls claims on appeal, as he did at trial, that he did not assign his entire interest in the Allen note to Benton. He argues that he assigned only a $50,000 interest in the note to secure his payment of Benton's legal fees. Therefore, he asserts that Hessler's interest in the assignment from Benton was extinguished when he paid all of Benton's attorney's fees. Nicholls asserts that he is entitled to payment on the outstanding note from Allen.

¶32. The trial court found that Nicholls had, at the September, 1991 hearing, assigned all of his interest in the Allen note to Hessler along with Benton assigning his interest to Hessler.

¶33. The only way Nicholls can claim he is owed anything on the Allen note is if he can show that his assignment to Benton was only a partial or collateral assignment, and that therefore he retained some interest in the note on which to be paid. The assignment from Nicholls to Benton is included in the record as Exhibit #3. The pertinent language states:

> In consideration of Paul T. Benton agreeing to defend Richard A. Nicholls, M.D., in the case of Sherry Jane Fields vs. Richard A. Nicholls, M.D., cause number S90-0167 in the United States District Court, Southern District of Mississippi, Southern Division; Richard A. Nicholls hereby assigns, conveys and delivers to Paul T. Benton that certain Deed of Trust and Contract for Sale dated February 15, 1985, recorded in Deed Book 817 Page 294 granted unto Richard A. Nicholls by Paul Allen, M.D., on property situated in the County of Jackson, State of Mississippi, described as follows, to-wit:
>
> (legal description omitted)
>
> Said Deed of Trust and Contract for Sale is hereby assigned, conveyed and delivered to Paul T. Benton in consideration of the Fifty Thousand Dollar ($50,000.00) retainer which Richard A. Nicholls, M.D., has agreed to pay Paul T. Benton for fees and expenses in the defense of the above stated cause of action. As is set forth in the Fee Contract executed on the 15th day of August, 1990.

Although the assignment does reference the $50,000.00 retainer to be paid to Benton, there is no limiting or qualifying language in this assignment that indicates it is a partial assignment intended only as collateral security.

¶34. At the September, 1991 settlement hearing Nicholls and Hessler agreed that Benton's interest in the note and deed of trust would be assigned to Hessler. The settlement transcript contains no discussion that would lead anyone to believe that Nicholls' assignment to Benton was a partial assignment. In fact, the parties discussed the fact that the outstanding principal owing on the note was approximately $170,000. If Benton only had a $50,000 interest to assign, it seems odd that the parties would have been concerned with the entire indebtedness, because presumably Nicholls would have retained a $120,000 interest. Furthermore, the assignment of this note was in satisfaction of an approximately $155,000 judgment owed by Nicholls to Hessler as well as relief from a $3000 monthly payment in alimony. We must presume that Hessler would never have accepted a $50,000 interest in a note when she was owed substantially more than this by Nicholls. Further, no one at the

hearing ever mentioned or intimated that Nicholls retained any interest in the note at all.

¶35. "Generally, the intention of the parties ascertained from the entire transaction, including conduct, determines whether the assignment is absolute or intended only as a collateral security." *International Harvester Co. v. Peoples Bank & Trust Co.,* 402 So. 2d 856, 861 (Miss. 1981) (quoting 6A C.J.S. Assignments Section 82, page 732). "[A] valid assignment of a debt or contract conveys the entire interest of the assignor to the assignee, and thereafter the assignor has no interest therein." *International Harvester Co.,* 402 So. 2d at 861. "As a general rule, a valid and unqualified assignment operates to transfer to the assignee all the right, title, or interest of the assignor in the thing assigned, but not to confer upon the assignee any greater right or interest than that possessed by the assignor." *Id.* at 861(quoting 6A C.J.S. Assignments, Section 73, pages 710-12).

¶36. We hold that the trial court did not err in finding that Nicholls had assigned all his right and interest in the Allen note and deed of trust to Benton, and that Hessler took from Benton in the same way that Benton received. The record supports this finding, and the chancellor was not manifestly wrong. Therefore, Nicholls was not entitled to a judgment against Allen for the outstanding debt on the note.

### 2. The lower court erred in awarding Allen a $50,000.00 judgment against Nicholls with no justification or support in the record.

¶37. In the final judgment, the trial court stated:

(G) Intervenor/Cross-Defendant Nicholls attempted to use the Chancery settlement process to have Hessler accept less than $50,000.00 for a $156,000.00 Judgment, while his representatives had represented that the full $170,000.00 Note and Deed of Trust had been assigned, which position by Nicholls was not supported by the Chancery settlement, handwritten agreement and Court Orders. Nicholls is hereby held responsible by this Court for inequitable conduct and does not come into this court with clean hands.

(H).....This Court is of the opinion, and so finds, that Nicholls and EB, Inc., are equally in violation of the basic rules of equity and, as such, should be each, and they hereby are, ordered to pay to Allen the sum of $50,000.00 each, to be applied by him on his Judgment to Hessler.

.....

(L) Nicholls owed the alimony debt; and his maneuvering of the Chancery settlement and his subsequent actions to try to get the bank to believe he retained an interest in the Allen note, when he did not, all contributed to the bank's hasty foreclosure of the Allen Deed of Trust; actions which this Court does not condone.

¶38. It appears that the chancellor based his decision to order Nicholls to pay a $50,000.00 judgment to Allen on the unclean hands doctrine. Apparently, this finding is based on Nicholls's assertion that he retained an interest in the Allen note, when he did not. The unclean hands doctrine would require that the court offer no relief to Nicholls, i.e, the court would not order that Nicholls was entitled to any payment or judgment on the Allen note. The doctrine would not encompass the trial court ordering Nicholls to pay a judgment. In *Patterson v. Koerner,* 220 Miss. 590, 71 So. 2d 464 (1954),

this Court said:

> In *Crabb v. Comer,* 190 Miss. 289, 200 So. 133, this Court said: 'It is one of the oldest maxims of the law that no man shall, in a court of justice, take an advantage which has his own wrong as a foundation for that advantage.' Moreover, one of the maxims of equity is, 'He who comes into equity must come with clean hands.' In other words, 'It says that whenever a party, who, as actor, seeks to set the judicial machinery in motion and obtain some remedy, has violated conscience, or good faith, or other equitable principle, in his prior conduct, then the doors of the court will be shut against him in limine; the court will refuse to interfere on his behalf, to acknowledge his right or to award him any remedy.' Vol. 1 Pomeroy's Equity Jurisprudence, 4ᵗʰ Ed., Section 397, page 738.

*Patterson,* 220 Miss. at 594-95, 71 So. 2d at 466. It is unclear from the record and from the chancellor's findings what this judgment is based upon. Presumably it is based on actions of Nicholls that the chancellor found to have caused the bank to act hastily in proceeding to foreclosure. We have held that the bank did not act hastily, and therefore, this issue is moot. The judgment against Nicholls is reversed.

### 3. The lower court erred in failing to grant Nicholls's 41(b) motion.

¶39. Nicholls's final assignment of error is that the lower court erred in failing to grant his 41(b) motion for dismissal. That rule states, in pertinent part:

> After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief.

Miss.R.Civ.P. 41(b). This issue is moot in light of our reversal of the judgment against Nicholls.

### Allen's Appeal

### 1.The trial court erred by failing to fully assess the damages suffered by Janie Hessler and Paul M. Allen, to Richard A. Nicholls and EB, Inc.

¶40. Allen's contention is that none of the damages awarded to Hessler should have been assessed against him, but instead should have been attributed to Nicholls and EB. He further argues that he should be awarded damages for the loss of his property in an amount not less than $50,000.00. Allen cites no applicable law to support his position except for the standard of review. In establishing the liability of the parties, it is clear to us that the only person against whom a judgment should have been rendered is Allen. He owed Hessler on her assigned note and failed to pay. He was in default and a judgment against him was proper. There is no merit to this assignment of error.

### CONCLUSION

¶41. While it is obvious to this Court that the chancellor attempted to reach an equitable decision in this complex case, we hold that he was in partial error. The judgments against EB and Nicholls in the

amount of $50,000.00 each are reversed. The judgment against Allen is affirmed. Damages are assessed against Allen for a total judgment of $234,076.38 to be paid to Hessler.

¶42. **AFFIRMED IN PART; REVERSED AND RENDERED IN PART.**

**SULLIVAN, P.J., BANKS, ROBERTS, SMITH, MILLS AND WALLER, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION. PRATHER, C.J., NOT PARTICIPATING.**

**McRAE, JUSTICE, DISSENTING:**

¶43. I disagree with the majority's determination that Allen received adequate notice of the foreclosure of his property. To the contrary, the chancellor's findings that Eastover Bank was required to give actual notice to Allen and Hessler should be affirmed. Accordingly, I dissent.

¶44. Allen received two letters from Eastover Bank, dated October 27 and December 10, 1992, advising Allen that his loan was in default and threatening foreclosure absent subordination of the note by Nicholls. Allen's attorney notified the bank that Nicholls' interest had been assigned to Hessler. Nevertheless, the bank foreclosed on the loan in February, 1993, without providing actual notice to Allen or Hessler. There is no evidence that the bank complied with the notice of sale provisions set forth in Miss. Code Ann. § 89-1-55 (1991).

¶45. In ***Morgan v. Linham***, 227 Miss. 584, 590, 86 So. 2d 473 (1956), this Court construed the identical language of Miss. Code Ann. § 888 (1942), the predecessor to § 89-1-55, as requiring *actual* notice to the mortgagor of the subject property, as well as to any grantee who had assumed the mortgage, as owner of the property. Prentiss Linham, who had inherited the subject property upon his wife's death, sought to set aside a foreclosure sale based, in part, on the bank's failure to provide him with actual notice of the trustee's sale. Linham had inherited the property with a lien against the title. While the bank officer with whom he had been working to pay off the indebtedness was hospitalized, the bank foreclosed on the property. Public notice was given pursuant to §888. Linham could not read and did not learn of the sale until he was advised of it by the purchaser. The Court found that while only the mortgagor or one who had assumed the mortgage was entitled to notice under §888, technically Linham was not entitled to notice since he was but the heir of the grantee of the original mortgagor. However since he was the occupant of the land and had been working with the bank to satisfy the lien, the Court found that "as a matter of equity and good conscience," he, too, was entitled to notice. ***Morgan,*** 227 Miss. at 590, 86 So. 2d at 475. Based on the absence of actual notice coupled with the inadequacy of the consideration given for the property, the foreclosure sale was set aside. ***Id***.

¶46. Allen was entitled to actual notice of the foreclosure. The bank's threats of foreclosure cannot be said to have served as notice; neither is the requirement of actual notice "extraordinary" as the majority opinion suggests. Furthermore, the bank's failure to follow the public notice procedures set

forth in § 89-1-55 renders the foreclosure sale void. I therefore would affirm the chancellor's finding that Allen and Hessler were entitled to actual notice and order the foreclosure sale set aside. Accordingly, I dissent.